UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| AMBREA C. PHILLIPS, b/n/k, | ) | |
| AUDIE L. PHILLIPS, and | ) | |
| AUDIE L. PHILLIPS, individually, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 3:06-CV-35 |
| | ) | (Shirley) |
| ANDERSON COUNTY BOARD | ) | |
| OF EDUCATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(c), Rule 73(b) of the

Federal Rules of Civil Procedure, and the consent of the parties, for all further proceedings,

including entry of judgment [Doc. 8].

This is an action for gender discrimination and for violation of civil rights pursuant

to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 ("Title IX"), and 42 U.S.C. §

1983. The plaintiff Ambrea C. Phillips, by her father and next of kin, Audie L. Phillips, and Audie

L. Phillips, individually, allege that Ms. Phillips was wrongfully removed from a weightlifting and

conditioning class because of her gender by the guidance counselors, assistant principals, and

principal at Anderson County High School. The plaintiffs bring suit against the Anderson County

Board of Education ("the Board"), alleging that the Board is the elected ruling body of the Anderson

County School District; that the Board is responsible for the management of the Anderson County

High School; and that the Board, through its agents and employees, denied Ambrea Phillips the right

to participate and enroll in the weight lifting and conditioning class solely because of her gender and in violation of her right to the equal protection of laws as guaranteed by the Fourteenth Amendment of the United States Constitution. [Doc. 1].

This matter is now before the Court on the Board's Motion for Summary Judgment [Doc. 16], which was filed on October 13, 2006. The plaintiffs responded on November 2, 2006 [Doc. 19], and the Court heard oral argument on the motion on November 16, 2006. Participating on behalf of the plaintiffs was attorney Roger L. Ridenour. Participating on behalf of the defendant was attorney Arthur F. Knight, III.

## I.  **Factual Background**

As required by Rule 56 of the Federal Rules of Civil Procedure, the Court will recite and consider the relevant facts in the light most favorable to the plaintiffs.

In the spring of 2006, the plaintiff Ambrea Phillips was a senior at Anderson County High School. Classes at Anderson County High School are in four blocks of approximately ninety minutes each: the first two blocks are in the morning, and the third and fourth blocks are in the afternoon. There are three assigned lunch periods of thirty minutes, each which occur during third block class time. [Ambrea Phillips Dep. at 18].

On January 3, 2006, Ms. Phillips was allowed to register for a weightlifting and conditioning class. The weightlifting and conditioning class was assigned to the first lunch period, which started at 11:25 and lasted approximately until noon. [Id. at 19]. Working with Linda Rauch, the guidance counselor at Anderson County High School, Ms. Phillips arranged her schedule to have Office Tech Co-Op for her first two class blocks; weightlifting and conditioning class for her third

class block; and U.S. Government/Economics for her fourth class block. [Rauch Dep. at 24; McCracken Dep. Ex. 6].

The weightlifting and conditioning class in which Ms. Phillips enrolled consisted of approximately 35 males and one other female. [Ambrea Phillips Dep. at 34-35, 56; McCracken Dep. Ex. 8]. Anderson County High School had offered the course for years and had always offered it to both boys and girls. [Ambrea Phillips Dep. at 29, 40]. In fact, another weightlifting and conditioning class was offered the same semester during the second block period. This class also included boys and girls. [Rauch Dep. at 31; Kerr Dep. at 5, 7; Ambrea Phillips Dep. 29, 55]. Both classes were taught by Josh Kerr. [Kerr Dep. at 5, 7].

The weightlifting and conditioning class is a course and not a competitive sport. [Ambrea Phillips Dep. at 32]. It involves running and using free weights and machines. Free weight exercises in the program include bench presses, squats, leg lifts, lunges, curls, and shoulder presses. [Id. at 31, 34-35]. Spotting on these exercises requires some physical contact between the lifter and the spotter. [Kerr Dep. at 15].

The parties dispute the circumstances leading to Ms. Phillips's removal from the weightlifting and conditioning class.[1] The defendant maintains that Ms. Phillips was removed after the other female student in the class withdrew on January 5, 2006. [McCracken Dep. Ex. 8]. Thereafter on January 6, 2006, Anderson County High School Principal Bob McCracken consulted with Mr. Kerr and decide to remove Ms. Phillips from the class because of "safety" and "liability" concerns. [Id. at 51-52, 57, 59-62, 71, 85]. Specifically, Dr. McCracken testified that he was

---

[1]While the parties differ on their accounts of these events, the Court does not view this dispute as dispositive to the issue of whether the Board discriminated against the plaintiff in violation of 42 U.S.C. § 1983 or Title IX.

3

concerned about the possibility of inappropriate behavior toward Ms. Phillips by the male students; the difficulty in Mr. Kerr supervising the class if he spotted Ms. Phillips; and Ms. Phillips's size compared to other weightlifters. [Id.].

The plaintiffs maintain, on the other hand, that as of Friday, January 6, 2006, the other female was still enrolled in the weightlifting class. Ms. Phillips testified that on January 6, 2006, Rhonda Woodfin, a secretary in the Anderson County High School guidance office, approached both her and the other female and informed them that they were both being removed from the class due to the lack of other females. [Ambrea Phillips Dep. at 36]. Ms. Phillips testified that Ms. Woodfin informed them that they were to report to the office on Monday January 9, 2006, to work as an office assistant or as a helper in the guidance office. [Id.].

On January 9, 2006, Ms. Phillips talked to Dr. McCracken and Principal Murrell Albright and questioned them about her removal from the weightlifting and conditioning class. [Ambrea Phillips Dep. at 44]. Both principals informed her that they would not have a class consisting of all boys, a male teacher, and one or two females in the class. They also told her that they did not care whether it was fair or not. [Id. at 45]. That same day, Ms. Phillips's father, Audie L. Phillips, contacted Anderson County High School to make sure that his daughter was not being removed from the class for being in trouble. [Audie Phillips Dep. at 9-10]. Mr. Phillips talked with Principal Albright, who informed him that his daughter would not be placed back into the class. [Id. at 27]. When Mr. Phillips asked Principal Albright about Title IX, he responded that he was not concerned about Title IX, that this was "our" school, and that Ms. Phillips would not be allowed back into the class. [Id.].

Mr. Phillips contacted a local television station, as well as the Tennessee Department of Education. [Id. at 26]. On Wednesday, January 11, 2006, Dr. McCracken was interviewed by the local television news reporter. During the interview and throughout his deposition, Dr. McCracken repeatedly acknowledged that he had removed Ms. Phillips from the class because she was female and because he was concerned for her safety in a room full of thirty-five boys and a male teacher. [McCracken Dep. at 54, 71, 7, 85, 62]. Dr. McCracken stated that his overriding concern for removing her from the class was that she may be raped or sexually assaulted. [Id.]. Dr. McCracken stated that any other concerns, such as spotting and lifting weights, were secondary to his overriding concern regarding a possible sexual assault. [Id. at 85].

Later that day, an attorney with the State of Tennessee contacted the Anderson County Director of Schools, Dr. V.L. Stonecipher, and advised him that the media had contacted her department regarding a possible Title IX violation at Anderson County High School. [Stonecipher Dep. at 14]. Following a principals' meeting that day, Dr. Stonecipher met with Dr. McCracken and advised him, "you need to take care of this, if you dropped somebody from a class make sure it's not because of their [sic] sex." [Id.]. Dr. Stonecipher also instructed Anderson County Title IX Coordinator Chuck Puglisi to investigate. [Id. at 17-19]. Mr. Puglisi testified that he met with the plaintiffs on January 11, 2006 in order to begin "work[ing] to get her back in class." [Puglisi Dep. at 33]. At 3:10 p.m. on Wednesday, January 11, 2006, Dr. McCracken and Ms. Rauch met with Ms. Phillips and told her that she would be allowed back into the weightlifting and conditioning class the next day. [Ambrea Phillips Dep. at 57]. Dr. McCracken told Ms. Phillips to report to the weightlifting and conditioning class at 11:25 a.m. [Id.]. In a meeting late Wednesday afternoon between the plaintiffs and Mr. Puglisi, Ms. Phillips complained about being instructed to report to

class at 11:25 a.m. She explained that her co-op ended at 11:25 and that it would impossible for her to make it to class on time. She told Mr. Puglisi that she would simply eat lunch on her way to class and then join the class at 12:00, after the first lunch period had ended. Mr. Puglisi made some calls, and Ms. Phillips was never required to report to the class thirty minutes earlier than the male students. [Ambrea Phillips Dep. at 57, 62-63; Audie Phillips Dep. at 17-20].

Ms. Phillips returned to the weightlifting and conditioning class on Thursday, January 12, 2006. She completed the semester and received an "A" in the weightlifting and conditioning course. [Ambrea Phillips at 32, 59]. She graduated in May 2006 with an overall GPA of 3.75. [Id. at 10].

Ms. Phillips testified that the stress of her removal from the weightlifting and conditioning class for those three days caused her to be unable to eat. [Id. at 43]. Due to the stress and her weakened immune system, she alleges that she contracted mononucleosis. [Id. at 65-66].

The plaintiffs contend that Ms. Phillips's removal from this weightlifting and conditioning class was not the first time that an allegation of discrimination had been "ignored" or "covered" up by the defendant. The plaintiffs rely on two examples. The first incident involved the transfer of a principal from one of the County's high schools to another high school for allegedly having an affair with another employee at the school. [McCracken Dep. at 14-16]. The second incident cited by the plaintiffs involved an alleged improper relationship between a student and an assistant volleyball coach at Anderson County High School. Dr. McCracken testified that despite having knowledge of improper emails and improper acts committed by the assistant coach, Dr. Stonecipher told Dr. McCracken not to investigate unless something in "writing" was presented to him. [McCracken Dep. at 21-27].

## II.     The Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden of establishing that there is no genuine issue of material fact lies upon the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

In considering a motion for summary judgment, the Court must take all of the evidence submitted by the non-moving party as true, and must draw all reasonable inference in the non-moving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable jury could find in its favor. Id. at 248. The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. Id.

Once the moving party presents evidence sufficient to carry its burden under Rule 56, the non-moving party may not rest upon its pleadings, but must affirmatively set forth, by affidavits or otherwise, "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). An entry of summary judgment is mandated if, "after adequate time for discovery and upon motion, [the non-moving party] fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. In reviewing the evidence, the Court must determine "whether the

evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." <u>Anderson</u>, 477 U.S. at 251-52.

**III.** <u>**Analysis**</u>

    **A.**     **Whether Defendant's Motion is Premature**

        The plaintiff first argues that the defendant's motion for summary judgment is premature because discovery is still ongoing in the parallel state court litigation and that certain depositions still need to be taken.

        The plaintiffs have not filed a motion pursuant to Rule 56(f) of the Federal Rules of Civil Procedure seeking to delay a ruling on the defendant's motion for summary judgment pending the completion of discovery, nor have the plaintiffs argued in their response to the defendant's motion that they are unable to present any facts essential to justify their opposition to the defendant's motion. <u>See</u> Fed. R. Civ. P. 56(f). At the summary judgment hearing, plaintiffs' counsel indicated that he intends to take the depositions of certain individuals involved in the two prior incidents relied upon by the plaintiffs to support their allegations that the Board had a custom and policy of failing to appropriately respond to sexual harassment and/or abuse. For the reasons stated more fully in this opinion, the Court finds that these incidents are factually distinguishable from the plaintiffs' case and are therefore neither relevant to the plaintiffs' cause of action nor dispositive of the issues before the Court. Accordingly, the Court concludes that the taking of depositions related to these incidents is not a legitimate basis for delaying a ruling on the defendant's motion for summary judgment.

**B.     Audie Phillips's Claims**

As an initial matter, the Court notes that Audie L. Phillips brought this action on behalf of his minor daughter, Ambrea Phillips, as well on behalf of himself individually.  As the defendant correctly points out in its brief, however, Ambrea Phillips is now 18 years old, [Ambrea Phillips Dep. at 6], and therefore no longer requires her parent to bring suit on her behalf.  Moreover, no consortium claim exists in favor of Mr. Phillips under 42 U.S.C. § 1983.  See Claybrook v. Birchwell, 199 F.3d 350, 357 (6th Cir. 2000) ("In the Sixth Circuit, a section 1983 cause of action is entirely personal to the direct victim of the alleged constitutional tort . . .; conversely, no cause of action may lie under section 1983 for emotional distress, loss of a loved one, or any other consequent collateral injuries allegedly suffered personally by the victim's family members.").  Nor does Mr. Phillips have standing to assert a Title IX claim.  See Lopez v. San Luis Valley, Bd. of Coop. Educ. Services, 977 F. Supp. 1422, 1425 (D. Colo. 1997) ("No court has held that a plaintiff who is neither a potential beneficiary of a federally funded education program nor an employee of such a program can maintain a Title IX action for sex discrimination.").  For these reasons, the Court finds that Mr. Phillips should be dismissed as a party plaintiff.

**C.     Ambrea Phillips's Section 1983 Claim**

"A plaintiff can bring a claim under section 1983 when she is deprived 'of any rights, privileges, or immunities secured by the Constitution and laws,' as a result 'of any statute, ordinance, regulation, custom, or usage, of any State.'" Doe v. Claiborne County, 103 F.3d 495, 505 (6th Cir. 1996) (quoting 42 U.S.C. § 1983).  In evaluating a municipal liability claim against a school board, the Court must apply a two-part test. First, the Court must determine whether the

plaintiff has asserted the deprivation of a constitutional right. <u>Doe</u>, 103 F.3d at 505. Second, the Court must determine whether the board caused the constitutional violation. <u>Id.</u> at 506.

Assuming for the purposes of this motion that the plaintiff has satisfied the first part of this inquiry, *i.e.*, that she has asserted the deprivation of a constitutional right, the Court turns to the second part of the inquiry, namely, whether the plaintiff has produced evidence to create a genuine issue of material fact as to whether the Board was responsible for that deprivation. The plaintiff cannot base her claim against the Board solely on the actions of school employees, as there is no *respondeat superior* liability under section 1983. <u>See</u> <u>Monell v. Dep't of Soc. Services</u>, 436 U.S. 658, 691 (1978); <u>Doe</u>, 103 F.3d at 507. "Rather, she must show that the School Board *itself* is the wrongdoer." <u>Doe</u>, 103 F.3d at 507. The Board will not be liable unless the plaintiff can show "that an officially executed policy, or the toleration of a custom within the school district leads to, causes, or results in the deprivation of a constitutionally protected right." <u>Id.</u> A "policy" for the purposes of section 1983 is "a deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." <u>Pembauer v. City of Cincinnati</u>, 475 U.S. 469, 483 (1986). A "custom" within the meaning of the section 1983 is a practice that is "so permanent and well settled as to constitute a custom or usage with the force of law." <u>Feliciano v. City of Cleveland</u>, 988 F.2d 649, 654-55 (6th Cir. 1993) (quoting <u>Monell</u>, 436 U.S. at 691).

The plaintiff asserts two theories of liability against the Board. First, the plaintiff argues that Dr. McCracken, as the principal of Anderson County High School, was a policymaker on the part of the Board. As evidence of his policymaking authority, the plaintiff specifically points

to the fact that Dr. McCracken made the decision to remove Ambrea Phillips from the class and that he further required her to report thirty minutes earlier than the other students.

The plaintiff's second theory of liability is that the Board is liable under section 1983 for failing to effectively investigate plaintiff's current claims, as well as prior claims of inappropriate conduct within the school. Specifically, the plaintiff claims that the Board ignored repeated complaints by parents regarding an inappropriate relationship between an assistant volleyball coach and a student, and that the Board failed to discipline a principal for having an affair with a subordinate employee. This conduct, the plaintiff contends, establishes that the Board has a custom of protecting and covering up for their employees, and not punishing or reprimanding them when they commit various forms of sexual discrimination.

Upon carefully reviewing the evidence, the Court concludes that the plaintiff has failed to produce evidence sufficient to create a genuine issue of material fact as to either theory of municipal liability against the Board. With respect to the plaintiff's theory that Dr. McCracken is a policymaker on behalf of the Board, the Court finds that there is no evidence of his authority in that regard. While the removal of Ms. Phillips from the weightlifting and conditioning class was the sole decision of Dr. McCracken, the undisputed facts show that once the Director of Schools, Dr. Stonecipher, and the Title IX Coordinator, Mr. Puglisi, were informed of Dr. McCracken's actions, an investigation was immediately ordered and within hours, Ms. Phillips was reinstated in the class.          The plaintiff argues that Dr. McCracken's actions in removing her from the class and, upon her reinstatement, requiring her to report thirty minutes earlier than her male classmates are evidence of his policymaking authority on behalf of the Board. The Court disagrees.

The evidence indicates that once the Board[2] became aware of Dr. McCracken's actions, an investigation was immediately ordered and his decision to remove Ms. Phillips was (rightfully) reversed. Furthermore, the undisputed facts show that although upon reinstating Ms. Phillips to the class Dr. McCracken told her that she would have to report to the weightlifting class thirty minutes early, that requirement was never enforced. Ms. Phillips testified that she complained to Mr. Puglisi that her co-op ended at 11:25 and that she would not be able to make it to class thirty minutes earlier as allegedly required by Dr. McCracken. Ms. Phillips further testified that she complained to Mr. Puglisi about this requirement, and that she was never required to report to the class thirty minutes as instructed by Dr. McCracken.

In sum, there are no facts in the record from which a reasonable jury could conclude that Dr. McCracken was a final policymaker on the part of the Board. Absent proof that Dr. McCracken had final policymaking authority on behalf of the Board to make such decisions, the Board cannot be held liable for his decision to remove Ms. Phillips from the class.

The Court finds that the plaintiff's second theory of liability must also fail because the plaintiff cannot establish a Board custom or policy of permitting gender discrimination. The evidence shows that Anderson County High School had offered the weightlifting and conditioning class for years to both male and female students. In fact, the very semester in which Ms. Phillips was removed from the class, there was another weightlifting and conditioning class offered in which both male and female students were enrolled. Thus, there is no evidence that the Board had engaged in the type of discrimination alleged by the plaintiff in the past.

---

[2]Although there is not conclusive evidence on this issue, the Court assumes, for the purposes of this motion, that notice to Dr. Stonecipher, as Director of Schools, and to Mr. Puglisi, as the County's Title IX Coordinator, constituted notice to the "Board."

With respect to the plaintiff's allegation that the Board has a custom of protecting and covering up for their employees, and not punishing or reprimanding them when they commit various forms of sexual discrimination, the Court finds that the prior incidents cited by the plaintiff are factually distinguishable from the facts of her case and therefore do not establish a custom or policy of the type of gender discrimination of which the plaintiff complains. The two prior incidents involved acts of inappropriate sexual conduct: one between a principal and a school employee and the other between an assistant coach and a student. Neither incident involves an act of alleged gender discrimination or the exclusion of females from any classes or school activities. Accordingly, these two incidents and the manner in which they were handled do not establish a pattern or practice of gender discrimination giving rise to liability in this case.

Even if these prior incidents could be construed as some type evidence of a pattern of inaction on the part of the Board, such conduct would still not result in liability in the present case. "A municipality could be found to have a policy of failing to act in the face of repeated constitutional violations. But it could also be found to have acted reasonably, or even negligently, in a particular case, thus precluding liability." Doe, 103 F.3d at 508-09. In the present case, the Court finds that the evidence indicates within hours of the Board becoming aware of Dr. McCracken's decision to remove Ms. Phillips from the class, Ms. Phillips was reinstated to the class. Thus, the evidence shows that as soon as the Board was aware of Dr. McCracken's actions, steps were immediately taken to remedy the situation. Therefore, regardless of how these prior incidents of sexual misconduct were handled by the Board, the Court finds that the Board acted reasonably in addressing the plaintiff's allegations in this case.

For these reasons, the Court concludes that the plaintiff has failed to establish that the Board was responsible for the alleged deprivation of her constitutional right to equal protection. Accordingly, the plaintiff's section 1983 claim must be dismissed.

**D.    Ambrea Phillips's Title IX Claim**

Title IX provides, in pertinent part: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ."  20 U.S.C. § 1681(a).  The statute "prohibits sex discrimination by recipients of federal education funding." Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 173 (2005).  There is an implied private right of action under Title IX, Cannon v. Univ. of Chicago, 441 U.S. 677, 690-93 (1979), and private parties may seek monetary damages for intentional violations of the statute, Franklin v. Gwinnett County Pub. Sch., 503 U.S. 60, 76 (1992).

The Board argues that the plaintiff's Title IX claim must be dismissed because there is no evidence that the Board caused or otherwise had any involvement in the plaintiff's removal from the weightlifting and conditioning class.  Citing Davis v. Monroe County Board of Education, 526 U.S. 629 (1999) and Smith v. Metropolitan School District Perry Township, 128 F.3d 1014 (7th Cir. 1997)[3], the Board argues that agency principles, such as those applied in Title VII cases, do not apply to Title IX actions, and therefore the Board cannot be held liable for Dr. McCracken's actions. Even if the Board could be held liable for his conduct, the Board contends that no Title IX violation occurred because the plaintiff suffered no academic detriment, as she was let back in the class after three days and successfully completed the course with an "A."  Finally, analogizing the weightlifting

_____

[3]The defendant erroneously cited Smith in its brief as a Sixth Circuit decision.

14

and conditioning class to a contact sport, the Board argues that Title IX does not prohibit the exclusion of members of the opposite sex from same sex contact sports teams, and therefore, the exclusion of the plaintiff from the class was permissible.

The plaintiff, citing Gossett v. Oklahoma, 245 F.3d 1172 (10th Cir. 2001); Mercer v. Duke University, 190 F.3d 643 (4th Cir. 1999); Middlebrooks v. University of Maryland, No. 97-2473, 1999 WL 7860 (4th Cir. Jan. 11, 1999); and Chipman v. Grant County School District, 30 F. Supp. 2d 975 (E.D. Ky. 1998), argues that agency principles apply to gender discrimination cases under Title IX, and therefore, the Board may be held vicariously liable for Dr. McCracken's actions. Alternatively, the plaintiff argues that even if the Davis standard were applied, the prior incidents of sexual misconduct gave the Board actual notice of gender discrimination and the manner in which these incidents were handled demonstrate that the Board acted with deliberate indifference to such claims. Finally, the plaintiff contends that there was a violation of Title IX in this case because the plaintiff was removed from the class for three days; that Dr. McCracken attempted to require her to report thirty minutes earlier than the male students; and that the plaintiff suffered illness and emotional distress as a result of her removal from the class. The plaintiff further challenges the defendant's analogy of the weightlifting and conditioning class to a contact sport.

As an initial matter, the Court rejects the defendant's argument that the plaintiff was not discriminated against because of her gender. Viewing the evidence in the light most favorable to the plaintiff, as the Court must at this stage in the proceedings, the Court finds that there are facts in the record from which a reasonable jury could conclude that Ms. Phillips was removed from the weightlifting class because she was female and that she suffered injuries as a result of this removal. The plaintiff was removed from the class for three days, and she claims to have suffered physical

illness and emotional distress as a result of her removal. While the plaintiff's damages claim is questionable, given the extremely short duration of her exclusion, the Court cannot say as a matter of law on this record that she suffered no damage as a result of Dr. McCracken's actions.

Further, the Court finds that there is evidence to support a finding of intentional discrimination in this case. Dr. McCracken admitted that his decision to exclude the plaintiff from the class was based upon her gender, and he cited concerns that she may be raped or sexually assaulted if placed in a class of all male students with a male teacher as the justification for her removal from the class. While Dr. McCracken's concerns may have been well-intentioned, there does not appear on the record to be any objectively reasonable basis for his concerns. There is no evidence in the record of prior student-on-student sexual harassment or sexual assaults during the weightlifting and conditioning class, nor is there any evidence of any misconduct or inappropriate activity on the part of this particular teacher. Accordingly, while there may have been a *possibility* of a sexual assault occurring, it cannot be said that this possibility was any more likely in this class than in any other class where both male and female students are present. Accordingly, the Court finds that the plaintiff's removal from the weightlifting and conditioning class was unwarranted and discriminatory.[4]

Finding that the plaintiff was removed from the class because of her gender does not, however, end the inquiry. As the Court has already determined that the undisputed facts show that

---

[4]The Court further finds the defendant's analogy of this class to a contact sport to be unpersuasive. The applicable regulations defines "contact sports" as including "boxing, wrestling, rugby, ice hockey, football, basketball and other sports the purpose or major activity of which involves bodily contact." 34 C.F.R. § 106.41(b). The limited physical contact between a spotter and a lifter, however, is not enough, in the Court's view, to classify weightlifting as a contact sport as defined by the regulations.

the Board did not have any involvement in removing the plaintiff from the class, the Court must now determine whether the Board can be held liable for Dr. McCracken's actions in doing so.

The United States Supreme Court has specifically rejected applying Title VII-type agency principles in Title IX cases. In Gebser v. Lago Vista Independent School District, 524 U.S. 274 (1998), the Supreme Court addressed the issue of whether a school district may be held liable for damages under Title IX for the sexual harassment of a student by a teacher. The Court concluded that the school district may not be held liable unless the school district had "actual notice of, and [was] deliberately indifferent to, the teacher's misconduct." Id. at 277.

The plaintiffs in Gebser argued that the Court should apply the standards in Title VII cases involving a supervisor's sexual harassment of an employee in the workplace. In support of that argument, the plaintiffs relied upon a passage in Franklin where the Supreme Court stated as follows:

> Unquestionably, Title IX placed on the Gwinnett Public Schools the duty not to discriminate on the basis of sex, and "when a supervisor sexually harasses a subordinate because of the subordinate's sex, that supervisor 'discriminate[s]' on the basis of sex." Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 64, 106 S. Ct. 2399, 2404, 91 L. Ed. 2d 49 (1986). We believe the same rule should apply when a teacher sexually harasses and abuses a student.

Gebser, 524 U.S. at 281 (quoting Franklin, 503 U.S. at 75). The Gebser plaintiffs argued that, in light of the Court's comparison of teacher-student harassment with supervisor-employee harassment, the common law agency principles applied in Meritor to assess an employer's liability under Title VII for sexual harassment should apply equally to sexual harassment cases brought under Title IX. Gebser, 524 U.S. at 282. The Supreme Court rejected the plaintiff's argument and specifically

rejected their reliance on the reference to <u>Meritor</u> in the <u>Franklin</u> decision as support for applying

agency principles in Title IX actions:

> Whether educational institutions can be said to violate Title IX based solely on principles of *respondeat superior* or constructive notice was not resolved by <u>Franklin</u>'s citation of <u>Meritor</u>. That reference to <u>Meritor</u> was made with regard to the general proposition that sexual harassment can constitute discrimination on the basis of sex under Title IX, . . . an issue not in dispute here . . . . Moreover, <u>Meritor</u>'s rationale for concluding that agency principles guide the liability inquiry under Title VII rests on an aspect of that statute not found in Title IX: Title VII, in which the prohibition against employment discrimination runs against "an employer," 42 U.S.C. § 2000e-2(a), explicitly defines "employer" to include "any agent," § 2000e(b). . . . **Title IX contains no comparable reference to an educational institution's "agents," and so does not expressly call for application of agency principles.**

<u>Gebser</u>, 524 U.S. at 283 (emphasis added).

As a further basis for rejecting the application of agency principles to Title IX cases,

the Supreme Court examined the structure and purposes of the statute. The Court identified the two

primary objectives of Title IX as: (1) "to avoid the use of federal resources to support discriminatory

practices" and (2) "to provide individual citizens effective protection against those practices." <u>Id.</u>

at 286 (quoting <u>Cannon</u>, 441 U.S. at 704). The Court noted that Title IX "condition[s] an offer of

federal funding on a promise by the recipient not to discriminate, in what amounts essentially to a

contract between the Government and the recipient of funds." <u>Gebser</u>, 524 U.S. at 286. This

"contractual framework" further distinguishes Title IX from Title VII, the Court noted, as "Title VII

aims centrally to compensate victims of discrimination, [whereas] Title IX focuses more on

'protecting' individuals from discriminatory practices carried out by recipients of federal funds."

<u>Id.</u> at 287.

The Court further found the contractual nature of Title IX to be significant in defining the scope of available remedies under the statute:

> When Congress attaches conditions to the award of federal funds under its spending power, U.S. Const. Art. I, § 8, cl. 1, as it has in Title IX and Title VI, we examine closely the propriety of private actions holding the recipient liable in monetary damages for noncompliance with the condition. Our central concern in that regard is with ensuring that "the receiving entity of federal funds [has] notice that it will be liable for a monetary award" . . . . If a school district's liability for a teacher's sexual harassment rests on principles of constructive notice or *respondeat superior*, it will likewise be the case that the recipient of funds was unaware of the discrimination. It is sensible to assume that Congress did not envision a recipient's liability in damages in that situation. See Rosa H. [v. San Elizario Indep. Sch. Dist., 106 F.3d [648, 654 (5th Cir. 1997)] ("When the school board accepted federal funds, it agreed not to discriminate on the basis of sex. We think it unlikely that it further agreed to suffer liability whenever its employees discriminate on the basis of sex").

Gebser, 524 U.S. at 287-88 (citations omitted). Additionally, the Court noted that "Title IX's express means of enforcement – by administrative agencies – operates on an assumption of actual notice to officials of the funding recipient." Id. at 288. Under a lower standard, the Court reasoned, "there would be a risk that the recipient would be liable for damages not for its own official decision but instead for its employees' independent actions." Id. at 290-91. For all of these reasons, the Court concluded Congress did not intend to allow the recovery of damages where liability was based upon the principles of vicarious liability or constructive notice, and further, that the purposes of Title IX would be frustrated if recovery of damages were permitted against a school district for a teacher's sexual harassment of a student without actual notice to the school district. Id. at 285, 287.[5]

_____

[5]Prior to the Gebser decision, the Sixth Circuit had concluded that Title VII agency principles should apply to sexual harassment claims brought under Title IX. See Doe, 103 F.3d at 514. The Court notes that Gebser essentially overrules Doe in this respect.

Following its decision in Gebser, the Supreme Court addressed the issue of whether a school board may be held liable for damages under Title IX for acts of student-on-student harassment in Davis v. Monroe County Board of Education, 526 U.S. 629 (1999). In Davis, the Supreme Court reiterated its holding in Gebser, noting that a recipient of federal funds may be liable for damages under Title IX only if "the municipality *itself* causes the constitutional violation at issue." Davis, 526 U.S. at 643 (quoting City of Canton v. Harris, 489 U.S. 378, 385 (1989)). Accordingly, the Court concluded that if a funding recipient does not engage directly in the harassment, it may be held liable only if it "acts with deliberate indifference to known acts of harassment in its programs or activities." Id. at 633.

The plaintiff argues that the Supreme Court's holdings in Gebser and Davis are limited to Title IX cases involving sexual harassment and should not be applied in Title IX cases involving other types of gender discrimination. The Court disagrees. Indeed, based upon the Court's reading of these authorities, the Court believes that if the Sixth Circuit or the Supreme Court were presented with a non-harassment Title IX claim, the holdings of Gebser and Davis would be applied to this type of claim as well. Although some of the language in Gebser and Davis arguably appears to limit the holdings of those cases solely to cases involving claims of sexual harassment, the Court finds that such an interpretation is too constrained for five main reasons.

First, the broad language of Gebser and Davis, as cited previously in this opinion, rejects the application of agency principles found in Title VII cases to Title IX cases based upon the general purposes of Title IX, statutory interpretation, congressional intent, its own remedial scheme, and overall policy considerations. As such, the Supreme Court's reasoning and broad proscription against applying agency principles in Title IX cases appears to this Court to set the standard for

determining institutional liability in all Title IX cases, whether sexual harassment claims or non-harassment gender discrimination claims.

Second, to apply agency principles or vicarious liability in non-harassment sex discrimination cases would appear to undermine the overriding principle espoused in <u>Gebser</u>, that is, that the liability of the recipient of federal funds (in this case, the Board of Education) depends on whether the recipient itself caused the harm or constitutional violation at issue:

> Consequently, **in cases like this one that do not involve official policy of the recipient entity**, we hold that a damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has **actual knowledge** of discrimination in the recipient's programs and **fails adequately to respond**.

<u>Gebser</u>, 524 U.S. at 290 (emphasis added).  As the Supreme Court later noted in <u>Davis</u>:

> [W]e concluded in <u>Gebser</u> that recipients could be liable in damages only where their **own** deliberate indifference effectively "cause[d]" the discrimination . . . .  The high standard imposed in <u>Gebser</u> sought to eliminate any "risk that the recipient would be liable in damages not for its **own** official decision but instead for its employees' independent actions."

<u>Davis</u>, 526 U.S. at 642-43 (emphasis added and citations omitted).  Clearly, this case did "not involve official policy of the recipient entity" and appears in fact contrary thereto.[6]  Nor can it be said that the Board failed to adequately respond, as the undisputed facts show that the plaintiff was promptly reinstated to the class once the Board was notified of Dr. McCracken's actions.

---

[6]Counsel for the Board stated at the summary judgment hearing that there is a written anti-discrimination policy in effect for the Anderson County School System.  The existence of this policy does not appear to be in dispute; however, neither party made that policy part of the record before the Court in this case.

Third, the application of the Gebser/Davis standard to this case would satisfy the two main objectives and purposes of Title IX: "to avoid the use of federal resources to support discriminatory practices" and "to provide individual citizens effective protection against those practices." Gebser, 524 U.S. at 286 (quoting Cannon, 441 U.S. at 704). In this case, no federal resources were used to support discriminatory practices, as the Board, once notified of Dr. McCracken's decision, immediately had the plaintiff reinstated to the class. Thus, the plaintiff was provided the effective protection envisioned by the statute.

Fourth, there is nothing in Gebser or Davis that specifically indicates that the actual notice/deliberate indifference standard espoused would not apply to other Title IX cases such as this one. To the contrary, the portions cited herein indicate that this standard would and should apply.

Finally, it would seem anomalous, if not completely contradictory, to apply the higher standard of requiring plaintiffs to show actual notice and deliberate indifference in cases involving egregious injuries from the reprehensible conduct of a teacher who sexually harasses a student, while allowing plaintiffs to meet the lesser standard of vicarious liability in cases such as the present one, involving minor injuries from the brief, temporary interruption of an educational opportunity due to gender discrimination.

Thus, even though Gebser and Davis were both sexual harassment cases, the Court concludes that the Supreme Court's rationale for rejecting the use of agency principles in those cases, which was based upon the Court's analysis of the purpose and structure of Title IX generally and as a whole, is applicable to any action brought pursuant to the statute. Indeed, several courts have applied the Gebser/Davis standard to cases involving non-harassment gender discrimination. See Grandson v. Univ. of Minn., 272 F.3d 568, 575 (8th Cir. 2001), cert. denied, 535 U.S. 1054

(2002); <u>Schultzen v. Woodbury Cent. Cmty. Sch. Dist.</u>, 187 F. Supp. 2d 1099, 1123 (N.D. Iowa 2002); <u>Niles v. Nelson</u>, 72 F. Supp. 2d 13, 17 (N.D.N.Y. 1999). The cases cited by the plaintiff to the contrary are not persuasive. None of these cases addresses the deliberate indifference standard announced by the Supreme Court in <u>Gebser</u> and <u>Davis</u>, nor does any of these cases articulate a reason why the deliberate indifference standard should not be applicable in the non-harassment context. <u>See, e.g.</u>, <u>Gossett v. Oklahoma</u>, 245 F.3d 1172 (10th Cir. 2001); <u>Mercer v. Duke Univ.</u>, 190 F.3d 643 (4th Cir. 1999); <u>Middlebrooks v. Univ. of Maryland</u>, No. 97-2473, 1999 WL 7860 (4th Cir. Jan. 11, 1999); and <u>Chipman v. Grant County Sch. Dist.</u>, 30 F. Supp. 2d 975 (E.D. Ky. 1998). Accordingly, based upon the holdings in <u>Gebser</u> and <u>Davis</u>, the Court holds that the Board may be held liable in this case for the removal of the plaintiff from the weightlifting and conditioning class only if the Board had actual notice of the plaintiff's removal and was deliberately indifferent to this action.

For the reasons previously stated herein, the Court finds that the undisputed facts demonstrate that the plaintiff and the plaintiff's father did not provide notice to the Board regarding her removal; instead, they apparently chose to contact the local news media and the State Department of Education regarding the incident.[7] Once the Board had notice on January 11, 2006 of Dr. McCracken's actions, the Board acted promptly in seeing that the plaintiff was immediately reinstated to the class as of January 12, 2006. There simply is no evidence that the Board was deliberately indifferent to the plaintiff's complaint of discrimination. The evidence shows that the Board responded and attempted to rectify the situation immediately once it became aware of it.

---

[7]As such, the plaintiffs should not be now heard to complain that the Board failed to act more promptly to Ms. Phillips's removal when the plaintiffs themselves were in part responsible for the delay in notifying the Board about the incident.

Because the undisputed facts demonstrate that the Board did not act with deliberate indifference to the plaintiff's complaint of discrimination once it became aware of Dr. McCracken's actions, the Court finds that the plaintiff's Title IX claim also must be dismissed.

**IV.**      <u>**Conclusion**</u>

For the foregoing reasons, the Court finds that the defendant Board is not liable under 42 U.S.C. § 1983 or Title IX for the alleged deprivation of the plaintiff's constitutional rights. Accordingly, the defendant's Motion for Summary Judgment [Doc. 16] is **GRANTED**. In light of the Court's ruling, the plaintiffs' Motion to Continue [Doc. 27] is moot and is therefore **DENIED AS MOOT**.

**JUDGMENT TO FOLLOW.**

**ENTER:**

     <u>s/ C. Clifford Shirley, Jr.</u>
United States Magistrate Judge